LNY v. Zurich American Insurance Company May it please the Court. We're here on two issues, and the Court should reverse on either. I'll first address jurisdiction and then the 12b.6 issues subject to the Court's questions. There is no diversity jurisdiction here because there was a colorable assignment of a complete cause of action. Now, everyone agrees, both sides, and of course this Court said in Grassy that Provident binds in that situation. The question here is whether Provident applies, and Zurich says that it doesn't, and that's for two reasons. First, Zurich says that the assignment wasn't valid because of the anti-assignment provision. Second, Zurich says the assignment wasn't complete because it was between corporate affiliates, and I'll take each of those in turn. On the anti-assignment provision, we've cited four cases from different Texas Courts of Appeals that Texas law distinguishes between the assignment of causes of action, like a breach of a contract, versus the assignment of the contract itself, the rights and duties under it. The assignment in this case was for claims, for causes of action, and that's in the record at 394 and 395. Now, the District Court, for its part, did not consider the actual assignment. It just considered the pleadings. This Court has held, though, in Baucus and Briefe at 34, that a motion to remand has to be decided on the whole record. So the District Court had to look at the assignment itself. Now, when the assignment purports to assign causes of action under Texas law, an anti-assignment provision that merely says you cannot transfer rights and duties under this contract does not bar the assignment of causes of action for breach of that contract. And one thing I think that's key here is that what we are offering is a way to reconcile the cases we cite with the cases Zurich cites on this issue. So, and I can go through that. There's a consistency here that can explain all of them. The cases are not actually in tension. Zurich is simply asking this Court to ignore the cases that we cite in favor of the cases they cite, so that they're offering no way to negotiate. And they're asking the Court to ignore them for two reasons, essentially. First is, well, none of them specifically involved insurance contracts. But it's clear under Texas law that insurance contracts are interpreted just like contracts generally. There is no carve-out in Texas law where insurance policies are interpreted differently. In fact, the law is the opposite. With the exception of construction of an ambiguous policy, and I'll get into that a little bit in the 12b-6 context, if both sides offer reasonable constructions of an insurance policy, the construction that favored the insured prevails. So that's the only difference. And it's a difference that would favor us here. So there's no reason to disregard the cases we're citing merely because they didn't involve insurance contracts. The second thing Zurich suggests is that they involved the UCC. And that's not correct. So for one of the cases, Elmiss-Swenson, that's the case that Zurich says involved the UCC, it was not a UCC case. It was a case where a breach of contract claim for an architect's services had been assigned. So it was a contract claim that had been assigned. The footnote where the Elmiss-Swenson court discusses this distinction under Texas law between assignment of causes of action or assignment of a contract, merely cited a provision in the UCC as an example of another area of Texas law that was consistent with the distinction that the court was drawing. So it was not a UCC case. All four of the cases we've cited involved the assignment of claims for breach of contract, which is what happened here as well. Now, when you look at our cases and the cases Zurich cites, I mentioned they can all be reconciled. And the distinction is simply looking at what was assigned and what did the anti-assignment provision say. So in the Two-Fifth Circuit cases, Keller and Conoco both fit neatly into the distinction that Zurich cite describe. And that's because in Keller, what was assigned was not a claim for breach of contract. What was assigned was the insurance coverage itself. And the court actually says that in the Keller opinion in rejecting that the coverage could be assigned. And the reason it's clear that what was being assigned was coverage and not a cause of action for breach of contract. So in the two-fifth case, the entity that had commercial general liability policy and had committed some form of negligence, there was no lawsuit. There was nothing. There was an assignment of all the assets as part of a corporate sale. And then later, after the assignment, someone sues and says the predecessor committed negligence. The subsequent entity is going to be liable. That subsequent entity had to suffer settlement and defense costs and was asking for coverage under the liability policy that had covered the predecessor. So at the time the predecessor made the assignment, there had been no claim made on this liability policy. There was nothing, there was no breach of contract claim to assign. So it's actually, it's consistent with the point we are making, which is that if there had been a breach of contract claim, that analysis would have been different. What happened in Keller was an assignment of coverage and that is not what happened here. We are not saying that the assignee, L&Y, now owns the restaurants and L&Y is the one who paid and made the claim and it got denied. We are saying the assigner did all that. That claim was rejected and then the breach of contract claim was assigned. For the other Fifth Circuit case they cite, Conoco, the language of the anti-assignment provision itself barred the assignment of a claim. So under the framework we are describing, if the language here said that, our assignment would not be valid. But our anti-assignment provision does not say that. It says rights and duties. So both of the Fifth Circuit cases that Zurich relies on can be reconciled under our view with the cases we cite. Zurich cannot reconcile them with the cases that we are citing. And then as far as the older Texas appellate court decisions Zurich cites, none of them actually involved this direct issue. In at least two of them, there either wasn't a breach of contract claim to assign yet or the assignment didn't purport to assign a cause of action. So the question wouldn't have even been presented. So with the anti-assignment provision, it would have been a breach of contract claim to assign a cause of action. And so that gets us to Zurich's second point, which is that this assignment wasn't complete because it was between corporate affiliates. Now the key language here is the word complete. So what does that mean? And in Grassi and Kramer, which are two cases where courts explored what wasn't a complete assignment, what counted was the fact that the assignor maintained a contractual interest in the claim or a right to the proceeds of the claim. So there was a contractual right that remained, whether it was because the assignor had only assigned part of the claim or had assigned to the claim and then received a separate assignment back where it was getting some portion of the recovery. We do not have that here. That is not what happened. And if you look at the assignment itself and the record at 394 and 395, it is clear that the assignor retains no interest in this claim whatsoever, contractually or otherwise. So what Zurich is saying is that this court should create a rule that categorically Provident does not apply anytime there's an assignment between corporate affiliates. Now no court has ever said that. Even the case that Zurich did, it did not involve corporate affiliates. It involved a parent and a direct subsidiary. And that is not what we have here. And I think the briefing is clear on this, but there is a little bit of confusion. So to be clear, Morton's owns LNY directly. The assignors, though, Fertitta Entertainment and Fertitta Hospitality are not ultimate parents of either of those entities. It is indirect. So this factual situation is not what the court, the Northern District, encountered in New Code. Now, and we cite a case out of the Northern District as well that is in fact applied Provident in the situation of corporate affiliates. Aside from the lack of precedent on this issue, though, I think there's a larger problem with Zurich's argument, which is that it's asking the court to treat corporate affiliates categorically as not distinct in this context, in a jurisdictional context. And in our brief, we cite Dole Foods from the U.S. Supreme Court, which has taken a completely opposite approach to that in the context of the Foreign Sovereign Immunities Act. And in Dole Foods, the court instructs that in the context of corporate law, structure often matters, and that we have to treat these entities as distinct, and that alter ego or veil-piercing or treating them all as one is the exception, not the rule, and that that would need to be proved if you were going to conflate them for jurisdictional purposes. And Zurich has not proved that here. The second reason Zurich's saying that the court should apply a categorical rule that Provident wouldn't apply in the context of corporate affiliates is that it's inherently suspicious, or that it just looks fraudulent or suspicious. And what I would say to that is that these exact same allegations were made in Provident. So in Provident, the defendant was saying, this assignment looks fraudulent, it looks suspicious, and the court instructed clearly that that is not something we are going to deal with on the question of remand. So in making that argument, Zurich is essentially trying to bootstrap around Provident. And Provident rejects that proposition. Under Provident, if it's a complete and if it's valid, remand is appropriate. Let me interrupt you. I'm sorry? Let me interrupt you. Yes, oh yes, please do. If we assume that we find that the parties are diverse and we get to the merits, what's your best case that damages caused by COVID-19 could be considered direct physical loss? Your Honor, the best case I will give you for that will be the Texas cases on what we're relying on the language, including cost of removal. And that is distinct from this court's other precedent. And on why including modifies physical damage or loss, I would direct the court to, so in response to the other side's 28J letter, I dug into this more, and I direct the court to actually Black's Law Dictionary, the meaning of including. And then also there's the Texas appellate decision, Ohio Casualty v. Patterson UTI. The site is 656 Southwest 3rd, 729, Penn site 735. It's out of the 14th Court of Appeals. It's a recent decision from fall of 2022, and it is pending review. Review has not been granted in the Texas Supreme Court, but the insurer is seeking it. It is not about COVID-19, but it is about the meaning of including. And what the 14th Court of Appeals held in that case is that the phrase damages, dot, dot, dot, there was interspersed language, including the cost of defense fees, meant that damages as a word was now defined to include the cost of defense fees, even though normally in the insurance context, and the insurer argued this passionately, damages does not include defense fees, but that that phrasing modified the meaning of damages. And so we are making a similar argument here. Physical damage or loss, this court has explained what that means when it's in isolation, and I recognize there are tons of precedent going against me on that. But, this, on the COVID-19 issue, yes. But, in our policy, because, and this is at record 2303, because damage or physical loss then is followed by a phrase that says including the cost of removal, physical damage or loss is now being modified to include another form of damage, which is the cost of removal. And the problem with Zerk's argument is they don't have any explanation for what that is, why that's there. Because every form of addressing physical damage that a microorganism might cause is already addressed in this policy. It talks about repair, restoration, renovation, replacement, remediation. Removal is there and it has to mean something different. And they can't explain what it means above and beyond those other words that clearly are thinking of the types of physical damage that this court has previously determined physical damage or loss to mean. This policy is different, though. And that word including modifies the meaning of physical damage or loss for this policy. So, and I would direct the court to that Ohio casualty case on the meaning of including, as well as Black's Law Dictionary. And this policy actually directs Webster's unabridged dictionary to be where you go to figure out the meaning of undefined words. And that's at their record at 1422. And Webster's has the same meaning as Black's Law Dictionary, which is that include means that what follows is a part of what precedes it or an example. It is included, it comprises what precedes it. And I see I'm about out of time. The only other point I'll make is on the interaction between the coverage, the microorganism coverage and the microorganism exclusion. Zurich has yet to offer an explanation of how those two things can interact without the exclusion swallowing the coverage. And I'm happy to address that more in rebuttal. Thank you. May it please the court. This court does not need to break any new ground to affirm on the diversity jurisdiction issue. There are two simple ways to affirm. I'll get to the Keller case in a moment, which controls and is on all fours. But first, the court could also affirm on the narrow ground relied on by the district court. And that is that LNY's claims and allegations in its state court petition all depend on LNY having rights under the policy. This argument wasn't addressed in the opening argument. The district court recognized that the petition in state court sought a declaration by the court of the rights of the parties under the policy and sought, asked the court to determine what the coverage under the policy applied to in the context of the direct physical loss or damage to property from the coronavirus. That state court petition was pled as though LNY was the policyholder and was the party under the policy. But everyone agrees that LNY could not be assigned rights under the policy, even under LNY's view of Texas law. So on that ground alone, the court can affirm. Under Keller as well, this case is on all fours with Keller. And Keller controls absent clearly contrary subsequent authority. My friend on the other side said that Keller doesn't involve a transfer of a cause of action and attempted to distinguish the case on that ground. But the case itself says and rejects, and I'm reading from the decision, the argument that the losses constituted a chosen action, which means a cause and action, that was transferred as part of a general transfer of all other assets. And then later in the decision, it goes on and rejects that distinction as specious between rights and duties under the insurance policy and causes of action arising from a breach of that insurance policy. The decisions that LNY cites all arise in the commercial context. They rely in part on the UCC provisions, which treat assignments differently and interpret them more narrowly. And so if you separate the Texas cases, and Keller relied on Texas appellate authority, which was also on all fours, involving the transfer, an assignment that occurred of a cause of action after the loss that had occurred, and there was a distinction argued between rights and duties and causes of action. You can separate the cases into two buckets, the insurance context and the commercial context. And there's good reason for that. That is because in the insurance context, unlike in the general commercial context, the premiums are determined based on who the parties are, the underwriting process, the relationship between the parties, it matters who the individual parties are. There's also an ongoing duty of cooperation and investigation, and there is furthermore particular public policy interests that the Texas Supreme Court has recognized in the insurance context. The Gandy decision, which is cited by LNY's own authority in Pagosa and City of San Antonio, that case recognized that where there is the potential for collusion against the insurer, the potential for the litigation to be distorted by an assignment, that that violates public policy. So I agree that the cases can be reconciled, but they are reconciled in such a way that Keller continues to control and this court is bound to follow it, absent some clearly contrary on-point appellate authority, which LNY has never identified. So those two particular narrow grounds for affirmance enable this court to not even get to the Provident question. LNY has never disputed that we don't get to Provident unless the assignment is valid. Here we do not have a colorable or valid assignment. And Grassley recognized that limitation on Provident as well. It speaks in terms of Provident applying where there is a valid assignment under state law. Under Rule 17, this court looks at who is the party holding the right under substantive law, which is Texas law, and determines who actually holds the right to bring the claim in this case. And that is the basis for determining diversity jurisdiction in the removal context. Here, where LNY does not have a right to assert because of an invalid assignment, we don't get to Provident. Provident involves looking past an assignment and considering an improper motive. And so for the reasons I've discussed, this court does not need to look past the assignment because the assignment is invalid. And the last point I'll make before I turn to Provident It's not valid because of the anti-assignment clause. That's correct, Your Honor, for two reasons. One, because LNY is asserting rights under the policy and LNY agrees that it couldn't have acquired those rights under the anti-assignment clause. And two, because even if we accept their distinction between rights and causes of action, this court has, the petition was raising causes of action. This court's already looked at this issue, has already carefully surveyed Texas law on this issue, and has already rejected their position. And before I move on to Provident itself, I would like to say that LNY is not asserting claims based on the rights of the policy and are asserting the rights under the policy themselves. They say, Plaintiff LNY seeks a declaration that the policy covers plaintiff's claims for direct physical loss of or damage to real property arising out of the public's fear of the coronavirus and so on, and that this justifies a declaration regarding the party's rights and obligations under the policy. LNY is the only plaintiff in that case and is undisputed it was not the policyholder. Turning also to Provident itself, if we, even accepting that there was a colorable or valid assignment here, this court in Grassy holds that where an assignment is partial and improperly made to defeat jurisdiction, that the court disregards that assignment, and that Fertitta retains its rights under the policy. In Grassy, the court said, characterize a complete assignment as one where the assigner retains no further interest in the cause of action, in the litigation. Here we have Fertitta retaining the rights under the policy, and what the court determines about those rights continues to affect Fertitta and its ongoing operation under the policy. And second, we know that Fertitta retains a financial interest in this action. Fertitta is disclosed as a financially interested party and is the ultimate parent of LNY. So it's a partial assignment, we can disregard it if it's collusive, and in terms of the collusiveness of the assignment, nowhere in their briefs did LNY dispute that the Fertitta is a Texas party and wants to be in state court. It assigned claims that it says are worth many millions of dollars for $10 of consideration to an entity whose sole member is its own subsidiary, and it did so days before filing suit in state court.  We haven't quibbled with the purpose of the assignment, and where the purpose of the assignment is to evade federal jurisdiction, this court disregards it when it is partial. My final point on diversity jurisdiction, unless there are questions from the court, is that if the court is going to honor the obligation under Rule 17 to determine the partisan interest and not rely on its own jurisdiction, it should conclude that LNY is not a real partisan interest and that it's the authority and responsibility of the federal court to protect its own jurisdiction by granting Zurich its right to remove. Turning next to the coverage question, as my friend on the other side acknowledged, this court has already determined the plain meaning of the phrase direct physical loss of or damage to property. That identical phrase appears throughout this policy. It appears 2288, 2353, 2303, 2355. That identical phrase that this court has interpreted in many, many cases requires a tangible physical harm to property. In Terry Black's, this court interpreted Texas Supreme Court precedent and held that the case is determining that that phrase requires tangible harm. And they agree that it's a prerequisite to coverage for each and every coverage they seek. And they agree, or they don't quibble with, the case is determining that that phrase requires tangible harm, and they do not allege or claim that they have suffered tangible harm. Instead, their sole argument is that the two additional microorganisms coverages change the meaning of that phrase, even though it's already been interpreted by this court relying on Texas law throughout the policy. However, it remains the case in those microorganisms coverages that the prerequisite to coverage is still direct physical loss or damage. The fact that these coverages recognize that a microorganism can cause damage to some property in some circumstances doesn't mean that any microorganism always causes damage to every property in all circumstances. It doesn't mean that this virus caused damage to their property. And the fact that the policy, the microorganisms coverage includes cost of removal doesn't change that analysis. It's still the case that when there is direct physical loss or damage, the policy covers the cost of removal of microorganisms. But simply because a microorganism is present, if it hasn't caused direct physical loss or damage to property, it would be nonsensical to read that language to cover the cost of removal. And I can give an example of when cost of removal would be covered by these additional coverages. Let's say you have a broken pipe that leads to water intrusion. It damages the steps and the steps are made out of wood. There's now mold damage to the property. The microorganisms coverage comes into play. It covers repairing those steps, taking out the wood, repairing that property because of the mold damage. It also covers removal of the microorganisms, removal of the mold in that vicinity, such as through using an antimicrobial spray. That recognizes that this mold is capable of and has caused physical damage to property. And if it's remaining in the property, that damage will continue. And so you can wipe down the drywall in the area. You can wipe down the banisters. You can do things to eliminate the mold from the property to stop the physical damage to the property. That's why that additional provision exists for these microorganisms coverages, but it doesn't change that fundamental threshold prerequisite which remains in the text of the policy for direct physical loss or damage. Including can mean it's a comprising part of the whole, but the whole still has to be there. You still have to have that direct physical loss or damage to include the cost of removal coverage. And a common sense example might be if I say, I will pay for my son's college, including the cost of his books. That means I will pay for books to the extent they're part of his college costs, but that doesn't mean that if they're not part of the cost of him going to college or he doesn't go to college, that I'll pay for any books. The first prerequisite still has to be satisfied to trigger that additional provision. Fertitta does not say that COVID-19 tangibly harms their property, and nor could it under this court's clear precedent. Fertitta alleges that the virus particles have a physical presence and exist on surfaces, and the virus harms people, but it's undisputed that the virus can be cleaned off or goes away on its own, and this court has already determined that that is not a physical loss or damage under the property policies. This court can stop there, because where there is no direct physical loss or damage, there is no coverage. If the court goes further, however, the microorganism exclusion comes into play, and that is because Fertitta has not identified a separate covered cause of loss that would give rise to the microorganisms coverage. Their argument is that there's tension between the microorganisms coverages and the microorganisms exclusion. They don't dispute. You still have to find direct physical loss or damage to property. That requirement is unsatisfied. The court doesn't have to go further, but if it does, they still have to allege a covered cause of loss of the microorganisms damage, some other cause of the loss that is covered outside of the microorganisms exclusion. But Fertitta doesn't do that. They do not actually plead that their theory here, this accidental lab leak in China, caused their loss. And we can look at Record on Appeal 1354 where they discuss this theory, and the complaint there just describes theories about the origins of the virus, where they actually describe the cause of the loss as 1362 to 1364, and that is as, and I quote, the COVID-19 pandemic, the public sphere of the coronavirus, government lockdown orders, and likely infection of their premises with COVID-19. They repeatedly try to conflate the origins of the virus with a covered cause of their loss, and in their response to the Supplemental Authority letter, they put a fine point on it. They say the question is not what caused the alleged loss or damage, the presence of the virus did. The question is what caused the presence of the virus. But that's not the right question, because they still have to identify a covered cause of loss, not a covered cause of the virus. The big red decision that we cited in our briefing rejected a very similar argument there. The policyholder argued that the threat of COVID-19, not COVID-19 itself, caused the loss, and the court held the threat of COVID-19 is indistinguishable from COVID-19 itself. You are alleging that the pandemic, the government orders, the presence of the virus caused your losses, and where that virus came from doesn't change the essence of the cause in your claim. This court in the Buchholz decision, which we provided in our 28J letter, did a similar analysis where there was a mold coverage and a mold exclusion, and concluded that you essentially can't separate water in the walls from the mold itself as a separate cause, where the only manifested harm to the property is the mold, or otherwise the coverage will swallow the exclusion. The same analysis applies here. There's no illusory coverage under Texas law unless all coverage is illusory, unless there are no factual scenarios, and we've provided already the example of mold from a broken pipe that leads to microorganisms damage that would be outside the exclusion, would be an exception to the exclusion, and meet the microorganisms coverage. So in conclusion, your honors, there are simple paths based on settled law to affirm the district court, both in its denial of the motion to remand and its grant of the motion to dismiss, and we urge the court to affirm. If there are no further questions, I'll yield the balance of my time. Thank you, counsel. Rebuttal. Thank you, your honor. One point on the jurisdictional issue. The district court did focus on the reading the complaint to be alleging rights and duties. What I think is important is the district court completely ignored the assignment itself, and under this court's precedent in Baucus and Valerio, this court has to look at the entire record. Even if LNY was making allegations based on rights and duties, that doesn't answer the question of whether it had causes of action, and it could bring those causes of action even if it didn't have rights and duties. On the coverage point, I think it's important to remember the framework under Texas law. All LNY has to do is allege a plausible claim under a reasonable reading of the policy. Zurich has to prove our reading is unreasonable as a matter of law to prevail. If both are reasonable, even if the court felt that the insurer's was more reasonable, reversal is still appropriate, and that's under the RSUI v. Lind case out of the Texas Supreme Court that is well-established Texas law. So then turning to why our reading is reasonable, what Zurich is doing is reading the word including to actually mean if then. If you suffer physical damage, then we will cover cost of removal. Or they're reading the phrase including cost of removal as if it followed, in the policy itself, as if it followed we will pay. It follows physical damage or loss. So it modifies physical damage or loss. The second problem is that in counsel's example, there's still no explanation of what cost of removal means as distinct from the other forms of repair, restoration, replacement, remediation that the policy already covers. So in counsel's example, that is remediation. That's mold remediation. That's separately discussed in the policy at Record 2355. So that is not removal. Removal has to be something different, and they can't offer an example that is distinguishable from all of those other words. The last point on this, if the court grants that our reading of including the cost of removal is at least reasonable, then the court has to get to the interplay between the coverage and the exclusion. And I think our reply brief at page 20 has a chart that is at least helpful for me, because the question here is there's a causal chain. And when we purchased the microorganism coverage, we were purchasing coverage for physical damage or loss, including the cost of removal, that was caused by a virus. So it is only triggered if a virus caused what we are complaining about. The question is what caused the virus. And counsel's citation to the recent decision from this court in Buchholz v. Cressbook, I completely agree with, because in that case, this court asked what caused the mold. The question for interplay between an exclusion and coverage is what caused the mold. And there, the problem was, at summary judgment, the insureds offered no evidence of what caused the mold. Their explanation was, well, the presence of water. That was not a covered cause of loss under the policy. Here at 12b-6, all we have to do is allege, not prove, a covered cause of loss caused the virus. You say when we purchased coverage. You're talking about when LNY purchased it? I'm talking about when the assignors purchased coverage, Your Honor. Yes. Because LNY did not purchase coverage. All LNY is doing is bringing the claim. Thank you. That was imprecise of me. So what LNY needs to allege to get this claim moving forward is that there was a covered cause of loss that caused the virus. And this is an all risks policy. So every cause of loss is covered unless excluded. And we've alleged the virus came, it resulted from this release from the Wuhan lab. That does not mean that a virus is always covered. For example, if terrorism caused the presence of the I think the problem here, the ambiguity, is coming from the fact that Zurich has put virus into a coverage that's actually about microorganisms, which are things that grow, typically, like mold. A virus doesn't grow. It doesn't just appear out of anywhere. It is an infectious strain of DNA that essentially gets transported from different living beings. But it has to come from somewhere. It has to result from something. And Zurich offers no explanation of, if we get to this question, what the virus came from. And that question has to be answered for there to be a logical way to read the exclusion and the coverage together. With that, I'd ask this Court to reverse. Thank you. Thank you, Counsel. We'll take this matter under advisement. That concludes the matters that are on today's docket for oral argument. And we are adjourned for the day. Thank you.